******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# IN RE MARIANA A.*
## (AC 40760)

Alvord, Prescott and Bear, Js.

*Syllabus*

The petitioner, the Commissioner of Children and Families, appealed to this court from the judgment of the trial court denying her petition to terminate the parental rights of the respondent parents with respect to their minor child. The petitioner had claimed that the respondent mother had failed to achieve such degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the mother could assume a responsible position in the life of the child. The petitioner claimed, as to the respondent father, that he had abandoned the child because he had failed to maintain a reasonable degree of interest, concern or responsibility as to her welfare. On appeal, the petitioner claimed, inter alia, that the trial court improperly concluded that she had not met her burden of proving that the mother had failed to achieve a sufficient degree of rehabilitation, which was based, inter alia, on the petitioner's assertion that the mother refused to accept that her boyfriend had physically abused the child. *Held*:

1. The trial court's decision to deny the petition for termination of parental rights with respect to the respondent mother was legally and logically correct and was supported by the evidence in the record:

 a. The petitioner's claim that the trial court, in evaluating the mother's rehabilitative efforts, failed to consider the mother's refusal to acknowledge the alleged abuse of the child by her boyfriend was unavailing: the record showed that the court gave due consideration to that claim but ultimately rejected it as a basis for concluding that the petitioner had demonstrated the mother's failure to rehabilitate, especially given that there was never any adjudication or express finding in the record definitively identifying the mother's boyfriend as the cause of certain injuries sustained by the child, and the court reasonably could have found that the mother had made and continued to make therapeutic progress and that, accordingly, she soon could assume a responsible position in the child's life; moreover, the record demonstrated that the trial court considered the mother's rehabilitation in light of the child's age and particular needs, and reasonably could have concluded that the mother had achieved a sufficient level of progress in her rehabilitation efforts to preclude termination of her parental rights.

 b. The trial court's factual finding that the Department of Children and Families had acknowledged the respondent mother's successful completion of a domestic violence program was not clearly erroneous; the petitioner at trial did not challenge the admission of testimony by a social worker that the mother had successfully completed the program, the specific steps that the court had ordered the mother to take toward reunification with the child required the mother to understand domestic violence and how it affected the child and the mother's functioning, and there was no evidence that the mother's belief that the child had lied about having been slapped by the mother's boyfriend rendered meaningless and, thus, unsuccessful the mother's completion of the domestic violence program.

2. The trial court properly denied the petition for the termination of the respondent father's parental rights, the petitioner having failed to demonstrate that the father had abandoned the child; although the father for many years had failed to take any action that would suggest an interest in or concern for the child's welfare, the court reasonably could have concluded that, after the father learned about the child's situation and over some period of time up to the relevant adjudicatory date, the father had made an effort to foster a relationship with the child, which she enjoyed and wanted to continue, by taking actions that included calling her on a regular basis, and providing her with a photograph of himself and financial support to the respondent mother.

Argued January 31—officially released April 18, 2018**

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, where the respondent father was defaulted for failure to appear; thereafter, the matter was tried to the court, *Hon. Robert G. Gilligan*, judge trial referee; judgment denying the petition, from which the petitioner appealed to this court. *Affirmed.*

*Andrei V. Tarutin*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellant (petitioner).

*Karen Oliver Damboise*, for the appellee (respondent mother).

*Joshua Michtom*, assistant public defender, for the minor child.

*Opinion*

PRESCOTT, J. The petitioner, the Commissioner of Children and Families, appeals from the judgment of the trial court denying her petition to terminate the parental rights of the respondent parents, Jane A. (mother) and Johnny B. (father), with respect to their minor child, Mariana A. The petitioner claims that the court improperly (1) concluded that she had not met her burden of proving by clear and convincing evidence that the mother had failed to rehabilitate in accordance with General Statutes § 17a-112 (j) (3) (B) (i), and (2) failed to analyze properly whether the father had abandoned Mariana pursuant to § 17a-112 (j) (3) (A). We disagree with the petitioner's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history, as set forth by the trial court in its memorandum of decision, or that otherwise are undisputed in the record. The mother was raised by her aunt in Puerto Rico, but frequently traveled between Puerto Rico and Connecticut. She completed her high school education, attending adult education classes while pregnant with Mariana but is unable to work due to epilepsy. She receives social security disability benefits and food stamps. She became pregnant with Mariana in 2007 while in Puerto Rico but returned to Connecticut when she was two months pregnant.[1] She currently lives with her unemployed boyfriend, Christian G., with whom she has another child, Alexis. Alexis was born on November 30, 2015.[2]

There is limited information regarding Mariana's father. He lives and works in Puerto Rico. He never has seen Mariana in person, although, after she was placed in foster care, he sent her a photograph of himself and has spoken to her on the telephone. At times, he has paid child support to the mother for Mariana, beginning several months after the Department of Children and Families (department) became involved with the family.[3]

In February, 2014, Mariana's kindergarten teacher reported to the department that Mariana had come to school with a bloody lip. Although Mariana initially told her teacher that her mother had slapped her while walking her to school because she had been "mouthing off," she later said to department investigators that she cut her lip when she fell while jumping on her mother's bed. After concluding its investigation of the incident, the department was not able to substantiate any allegations of physical abuse.

Four months later, in June, 2014, the department received a second call from Mariana's school indicating that she again had reported to school with minor injuries, this time on her nose. Although there were visible marks on the skin of Mariana's nose, the skin was not

broken. When asked about her nose, Mariana explained that her mother's boyfriend, Christian G., whom she referred to as "father," had bitten her. Mariana nevertheless gave no indication to school officials that she was afraid to return home. When contacted by the department, the mother explained that Mariana had fallen while jumping on a couch. Mariana was taken to a hospital where she was examined independently by two physicians. Each of the physicians concluded that it was not possible to determine the cause of the marks on Mariana's nose and that the marks were too small to be submitted for a forensic dental examination. The physicians did not observe any other questionable marks or bruises on Mariana. On July 24, 2014, following its investigation of this second incident, the department issued a report substantiating allegations of abuse and neglect against Christian G.

On September 23, 2014, the petitioner filed a neglect petition that alleged both physical abuse and neglect of Mariana. In addition to citing the incidents involving Mariana's bloody lip and injured nose, the petition contained allegations that (1) Mariana had been exposed to domestic violence between the mother and Christian G.,[4] (2) Christian G. abused substances and was permitted to be alone with Mariana, and (3) the mother refused to engage in services offered by the department unless ordered to do so by a court.

The mother pleaded nolo contendere with regard to the neglect petition, but only as to the neglect allegation that Mariana was "being permitted to live under conditions, circumstances or associations injurious to [her] well-being."[5] On December 30, 2014, the court, *Burgdorff, J.*, accepted the plea and adjudicated Mariana neglected. The court ordered that Mariana remain in the mother's custody subject to a six month order of protective supervision by the department. On April 9, 2015, the court, *Dannehy, J.*, extended the order of protective supervision for an additional six months at the request of the department, which sought to have additional time to oversee the mother's compliance with treatment services. The mother signed a service agreement/safety plan with the department in which she agreed, inter alia, that Christian G. would leave her residence and have no contact with Mariana.

On June 3, 2015, Mariana's therapist reported to the department that Mariana had arrived for a therapy session with "two faint but visible marks on her face." Mariana told the therapist that Christian G. had slapped her. When the mother was told what Mariana had reported, she stated that Mariana was a liar. Later that same day, the department went to the mother's home to investigate the report. Christian G. was there when investigators arrived, which was in violation of the service agreement/safety plan. He explained that he was present only to clear his name with respect to Mariana's

claim that he had slapped her. According to the investigator's report, which was admitted at trial and quoted by the trial court, "the [department] social worker requested the mother to wake Mariana so she could be interviewed. When awakened, Mariana immediately went to Christian G. and sat in his lap. The [child] appeared to be very bonded to Christian and would not talk with [the social] worker at all. [The social worker] observed Mariana's face and did not see the marks that were reported by the [therapist]." Before she left, the social worker had the mother sign another service agreement/safety plan indicating that she would not allow unsupervised contact between Christian G. and Mariana, and that she would not permit Christian G. to return to her home.

On June 5, 2015, on the basis of the June 3, 2015 incident, the petitioner filed for an ex parte order of temporary custody, which the court, *Burgdorff, J.,* granted. On June 8, 2015, the petitioner filed a motion to open and modify the disposition of protective supervision, rendered as part of the earlier neglect adjudication, to an order of commitment to the petitioner. The court, *Lobo, J.,* at a preliminary hearing on June 10, 2015, consolidated the hearing on the order of temporary custody with the hearing on the petitioner's motion to modify disposition.

On June 29, 2015, following that hearing, the court, *Dannehy, J.,* rendered a decision granting the petitioner's motion to modify disposition and finding that commitment to the petitioner was in Mariana's best interest. The court found under the fair preponderance of the evidence standard that the petitioner had established an "ongoing pattern of abuse" involving both the mother and Mariana, and that "the fact that the mother continues to minimize or deny indicates that she has no insight into [Christian G.'s] behaviors." The court further found that the mother had violated her service agreements with the department, which required that she not permit Christian G. to have contact with Mariana or to reside in her home. The court, however, made no express findings regarding any specific instances of abuse of Mariana or her mother by Christian G. Mariana was removed from the home and eventually was placed by the department into foster care with her maternal great aunt.[6]

Judge Dannehy subsequently approved the department's permanency plan of termination of parental rights and adoption. On September 22, 2016, the petitioner filed the petition for termination of parental rights at issue in this appeal. The sole adjudicatory ground asserted with respect to the mother was that she had failed "to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [she] could assume a responsible position in the

life of the child . . . ." General Statutes § 17a-112 (j) (3) (B) (i). With respect to the father, the petition alleged, pursuant to § 17a-112 (j) (3) (A), that Mariana had been abandoned because he allegedly had "failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."

Following a trial, the court, *Hon. Robert G. Gilligan*, judge trial referee, issued a memorandum of decision on July 13, 2017, denying the petition. The court made initial findings that the department made reasonable efforts to locate both parents and, having accomplished the same, made reasonable efforts to reunify them with Mariana.[7] Despite the findings of reasonable efforts by the department, the court nonetheless concluded on the basis of the totality of the evidence admitted at trial that the department had failed to meet its burden of demonstrating by clear and convincing evidence the adjudicatory ground for termination asserted in the petition against each of the parents.

The court first addressed the petitioner's claim that the mother had failed to demonstrate a sufficient level of personal rehabilitation such that, within a reasonable period of time, she would be able to assume *some responsible position* in Mariana's life. The court recognized that the mother's involvement with the department arose as a result of suspected physical abuse of Mariana as well as intimate partner violence between Christian G. and the mother. The court acknowledged the petitioner's argument that the mother continued to adhere to her belief that Mariana had lied about being abused by Christian G. and that her steadfast adherence amounted to conclusive evidence that she had failed to gain the needed insight and ability to care for Mariana. The court also considered the mother's arguments that there was insufficient evidence corroborating Mariana's inconsistent reports of the cause of her injuries, and, therefore, the mother's beliefs that her daughter had lied and that Christian G. was not an abuser were not unreasonable under the circumstances and cannot provide a sufficient basis for the termination of her parental rights.

The court made no findings on the basis of its review of the record as to whether Christian G. ever had physically injured Mariana. Although the court took judicial notice that Mariana had been found neglected in a prior proceeding, it also noted that the mother had entered a nolo contendere plea only with respect to the allegation that Mariana had been permitted to live in conditions injurious to her well-being, not as to the abuse allegations, which were never adjudicated in the underlying neglect proceedings. The court's recitation of the underlying history demonstrates the lack of any specific findings by a court that Christian G. caused Mariana's various injuries. For example, there was never any substantiation of abuse with respect to the bloody lip inci-

dent. The physicians who examined Mariana's nose were unable to determine the cause of the visible marks observed by the school and also did not observe any evidence of physical mistreatment. With respect to Mariana's reporting that Christian G. slapped her on June 3, 2015, the court highlighted that the department's investigator did not observe the reported marks on Mariana's face on the day that such marks were reported and that the mother believed Mariana was lying, a position to which she consistently has adhered. Moreover, the investigator observed Mariana's demeanor around Christian G., noting that she voluntarily sat in his lap and appeared very bonded to him.

Ultimately, the court found that it was unnecessary to resolve the parties' claims regarding the cause of Mariana's injuries because the court concluded that there were other reasons to deny the petition. The court relied in part on the fact that the mother substantially had completed the specific steps ordered by the court, continued to engage in her individual therapy sessions, and had weekly visits with Mariana. The court noted that Mariana and the mother had a loving relationship with each other. The court also recognized that Mariana had bonded with her half sibling, Alexis, who had remained in the custody of the mother and Christian G. without incident for nineteen months. At the time of the court's decision, Mariana, through counsel, had expressed an interest in continuing to live with her great aunt, which the court recognized might be a "more suitable custodial arrangement" for Mariana. The court opined, however, that the mother could still assume a responsible position in Mariana's life without necessarily regaining full physical custody and that a transfer of guardianship could achieve this objective without terminating completely the legal relationship between Mariana and her mother.

With respect to the father, the court found that as of the adjudicatory date of September 22, 2016, the father had demonstrated a sufficient degree of interest in Mariana. In particular the court credited the fact that he had sent Mariana a photograph of himself and had called her at her foster home on a regular basis. The court also credited the statement of the attorney for Mariana that Mariana had been excited to learn about the existence of her father and was happy to receive his photograph and phone calls. Furthermore, the court found it significant that the father made monthly child support payments beginning in late 2014 or early 2015, and that those payments had continued through the adjudicatory date.

On the basis of these findings, the court concluded that the petitioner had failed to establish by clear and convincing evidence an adjudicatory ground against either the mother or the father. It did not reach, therefore, whether termination was in Mariana's best inter-

est. This appeal followed.[8]

## I

The petitioner first claims that the trial court improperly denied the petition to terminate the mother's parental rights pursuant to § 17a-112 (j) (3) (B) (i). The petitioner's claim is twofold, each part predicated on the mother's refusal to accept that Christian G. had physically abused Mariana. First, the petitioner claims that Christian G.'s alleged abuse of Mariana was central to the department's involvement with this family, and that the court failed to consider the mother's refusal to acknowledge the abuse in assessing the adequacy of her rehabilitation efforts, particularly in light of Mariana's age and needs. Second, the petitioner claims that, in assessing the mother's rehabilitation efforts, the court relied on an erroneous factual finding, namely, that the mother *successfully* had completed an intimate partner violence program. The petitioner takes the position that successful completion necessarily would have required her to acknowledge the abuse by Christian G. We are not persuaded.

We begin with general principles of law and our applicable standard of review. "Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The commissioner . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds." (Internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 526, 175 A.3d 21 (2018). "Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *In re Carla C.*, 167 Conn. App. 248, 258, 143 A.3d 677 (2016). If the trial court determines that the petitioner has failed to meet this high burden, it must deny the petition.

Turning to the applicable standard of review, we note that the majority of appeals taken from a trial court's decision on a petition to terminate parental rights are brought by a respondent parent challenging the granting of such a petition. Appeals by the petitioner from the denial of a petition are far less common. The difference

in procedural posture alters somewhat our standard of review. In an appeal from the granting of a petition, our Supreme Court has indicated that the court's ultimate conclusion as to whether a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. See *In re Egypt E.*, supra, 327 Conn. 526; *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015). Thus, in reviewing the granting of a petition, "we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]." (Internal quotation marks omitted.) *In re Egypt E.*, supra, 526.

In an appeal challenging the denial of a petition to terminate parental rights, however, our role as a reviewing court no longer involves evaluating the record for evidentiary sufficiency. In denying a petition, the trial court, in its role as the trier of fact, has evaluated and weighed the evidence admitted in support of the petition and found that evidence lacking or insufficient to meet the petitioner's high burden of proof. In the absence of clearly erroneous factual findings that are material to the decision, the question is not simply whether there is some evidence that would support the granting of the petition. Rather, we must review whether, in light of the facts found by the court and the evidence it credited, the only rational outcome would have been for the court to grant the petition.[9] We cannot reweigh the evidence or reevaluate the credibility of witnesses to determine whether, in our own view, the evidence could have warranted granting the petition. Every reasonable presumption must be made in favor of the trial court's ruling denying the petition. See *In re Jayce O.*, 323 Conn. 690, 716, 150 A.3d 640 (2016) ("[i]f the [trial court] could reasonably have reached its conclusion, the [judgment] must stand, even if this court disagrees with it" [internal quotation marks omitted]). As indicated, we are bound by the trial court's subordinate factual findings, which are reviewable only for clear error. *In re Shane M.*, supra, 318 Conn. 587. Finally, "[t]o the extent we are required to construe the terms of [a relevant statutory provision] or its applicability to the facts of [a particular] case . . . our review is plenary"; *In re Egypt E.*, supra, 327 Conn. 526; however, it bears repeating that we do not reevaluate de novo the merits of the adjudicatory grounds asserted. With these principles in mind we turn to the petitioner's claims.

A

We begin with the petitioner's claim that the trial court failed to take into account properly the central issue that led to the department's involvement with this family, namely, the abuse allegations against Christian G. The petitioner also suggests that the court failed to

consider the mother's rehabilitation efforts in light of Mariana's age and specific needs. We are not persuaded.

Section 17a-112 (j) (3) (B) (i) authorizes the Superior Court to grant a petition for termination of parental rights on the ground of failure to rehabilitate. The petitioner may prove this statutory ground by showing, among other requirements, that the child "has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."

"[P]ersonal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent . . . [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [Section 17a-112 (j) (3) (B) (i)] does not require [a parent] to prove precisely when [she] will be able to assume a responsible position in [her] child's life. Nor does it require [her] to prove that [she] will be able to assume full responsibility for [her] child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation [she] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [she] can assume a responsible position in [her] child's life." (Internal quotation marks omitted.) *In re Elvin G.*, 310 Conn. 485, 507, 78 A.3d 797 (2013).

"Specific steps provide notice and guidance to a parent as to what should be done to facilitate reunification and prevent termination of rights. Their completion or noncompletion, however, does not guarantee any outcome. A parent may complete all of the specific steps and still be found to have failed to rehabilitate. . . . Conversely, a parent could fall somewhat short in completing the ordered steps, but still be found to have achieved sufficient progress so as to preclude a termination of his or her rights based on a failure to rehabilitate." (Citation omitted.) Id., 507–508.

The petitioner argues that the court's assessment of the mother's rehabilitation level should have included consideration of the mother's alleged lack of progress because she failed to acknowledge that Christian G. had abused both her and Mariana. The petitioner argues that the court "refused" to engage in any analysis of this issue. Our review of the court's memorandum, however, indicates that the court took account of the petitioner's argument that the mother's continued adherence to her

belief that Mariana lied regarding physical abuse by Christian G. undermined her progress toward meaningful rehabilitation. The court clearly gave due consideration to the petitioner's argument, but ultimately rejected it as a basis for concluding that the petitioner had demonstrated the mother's failure to rehabilitate.

Although the petitioner argues, as it did before the trial court, that the alleged abuse by Christian G. had already been established as a matter of law in the underlying neglect proceedings, the record does not support this assertion, as indicated by the trial court. There was never any adjudication or express finding that Mariana's injuries were the result of abuse by Christian G. The mother entered a nolo plea with respect to the abuse and neglect petition but only as to one allegation of neglect, which did not include the abuse. Any findings by Judge Dannehy in modifying the neglect disposition from protective supervision to commitment were made under the fair preponderance of the evidence standard rather than the more exacting clear and convincing standard that applies in termination of parental rights adjudications. Further, although Judge Dannehy stated that the petitioner had established an "ongoing pattern of abuse" involving both the mother and Mariana, he did not state how this was established or make any subordinate findings regarding any particular instances of abuse. Because of the lack of a finding in the record definitively identifying Christian G. as the cause of Mariana's injuries, we cannot conclude that the trial court committed reversible error by failing to focus its analysis on the mother's failure to acknowledge him as an abuser in evaluating her rehabilitative efforts.

We agree with the petitioner that, as a general proposition, the failure to acknowledge and make progress in addressing the issues that led to a child's removal may be one of many contributing factors to a court's determination that a parent has failed to achieve a sufficient degree of personal rehabilitation. None of the cases cited by the petitioner in her appellate brief, however, holds that this factor is necessarily determinative, suggesting only that it is one of any number of considerations that should inform a court's final determination. The court found that the mother continued to fully engage and participate in therapy, and that she continued to visit and bond with Mariana. Thus, contrary to the petitioner's views, the court reasonably could have found on this record that the mother had made and continued to make therapeutic progress and that, accordingly, she soon could assume a responsible position in Mariana's life, if in fact she had not already.

Our review of the record in this case convinces us that the trial court also considered the mother's rehabilitation in light of Mariana's age and particular needs, and reasonably could have concluded that the mother had achieved a sufficient level of progress in her rehabil-

itation efforts to preclude termination of her parental rights. As the court properly found, the mother successfully participated in and completed her domestic violence program and continued to work through various issues in her individual therapy sessions, which, at the time of the termination trial, remained ongoing. Although the court acknowledged that Mariana had expressed a desire to remain in her placement with her relative foster parent, it also considered that the mother had regular visits with Mariana and that she and Mariana had a loving relationship. Additionally, the court noted in its decision that Mariana had bonded with Alexis, who continued to live with the mother and Christian G. The court certainly appears to have taken the entire broad set of circumstances into account in concluding that, even if full custodial parenting might not resume, Mariana's placement with a close relative coupled with the mother's therapeutic progress to date demonstrated that she could assume a responsible role in Mariana's life. Having reviewed the record in its entirety, we cannot conclude that the trial court failed to consider the mother's refusal to acknowledge the alleged abuse by Christian G. in evaluating the mother's rehabilitative efforts.

B

We next address the petitioner's related claim that, in reaching its decision to deny the petition, the trial court relied on a clearly erroneous factual finding. Specifically, the petitioner asserts that the court erroneously found that the mother completed successfully a domestic violence program and that the department acknowledged this at trial. This is the sole factual finding of the court challenged by the petitioner. The mother responds that there is ample evidence in the record to support the court's finding. We agree with the mother.

The following additional facts are relevant to our resolution of this claim. Following the adjudication of neglect, the court ordered the mother to comply with a number of specific steps, including that the mother take part in counseling with the following specified goal: "Mother to understand domestic violence and how it affects the child and mother's functioning." The court further ordered a domestic violence assessment and treatment. The orders also provided that the mother shall not permit Christian G. to have contact with Mariana. In its memorandum of decision denying the termination of parental rights petition, the court, in discussing the mother's efforts at personal rehabilitation found that "[the department] acknowledges that [the mother] has engaged in and successfully completed her Intimate Partner Violence program."

At the trial on the petition for termination of parental rights, a department social worker testified in response to direct examination by the petitioner that the mother had accepted all of the department's referrals for treat-

ment and fully complied by attending appointments and participating in programs. The social worker also testified that, despite her compliance with various treatment programs, the mother continued to believe and assert that Mariana had lied about the abuse allegations against Christian G. The petitioner asked the social worker whether she believed that denying the abuse allegations was consistent with being compliant with the specific steps ordered by the trial court, but counsel for the mother objected, arguing that the social worker's belief was irrelevant and what mattered was whether the mother had completed the required programs. The court sustained the objection, indicating that it was the court's role to determine whether there was compliance or not. The petitioner does not challenge this ruling on appeal.

During cross-examination by counsel for the mother, the social worker was asked again directly whether the mother successfully had completed the domestic violence components of the specific steps. The social worker answered "yes," without any qualifications. The petitioner did not object to her rendering this opinion.

As previously indicated, "[i]t is axiomatic that a trial court's factual findings are accorded great deference. . . . A [factual] finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *In re Baciany R.*, 169 Conn. App. 212, 225, 150 A.3d 744 (2016).

With the exception of the requirement that Christian G. not be allowed to have contact with Mariana, the petitioner's social worker testified that the mother successfully complied with all of the specific steps ordered by the court. This necessarily included the requirement that the mother participate in a domestic violence program. The social worker later replied in the affirmative to a question by the mother's counsel asking if the mother completed successfully the domestic violence component of the specific steps. If the social worker believed that the mother's failure to acknowledge Christian G. as an abuser necessarily meant that she had not successfully completed the domestic violence program, she presumably would have answered that question in the negative or answered yes with a qualifying explanation. Instead, she unequivocally testified that the mother had successfully completed the program. Accordingly, there was direct evidence in the record that supports the trial court's factual finding that the department had acknowledged the mother's successful completion of the domestic violence program.

Furthermore, we are not left with a firm conviction that a mistake was made by the court. The specific steps did not explicitly require the mother to acknowledge that Christian G. had abused her or Mariana.

Rather, the steps ordered her to "understand domestic violence and how it affects the child and mother's functioning." Thus, the order focused on education rather than obtaining an admission regarding past instances of abuse. There simply is no evidence in the record before the trial court that the mother's continued belief that Mariana lied about being slapped by Christian G. rendered meaningless, and thus unsuccessful, her completion of the domestic violence program. Although it appears that the department attempted to solicit support for this proposition from the social worker who testified at trial, the court sustained an objection to that inquiry. The petitioner does not challenge that evidentiary ruling on appeal or the admission of the social worker's opinion that the mother successfully completed the program. Accordingly, we reject the petitioner's claim that the trial court rendered its decision on the basis of a clearly erroneous factual finding.

In sum, we cannot conclude on the basis of this record that the trial court's decision to deny the petition for termination of parental rights with respect to the mother was not legally correct or logically supported by the evidence admitted and credited by the court.

II

Finally, the petitioner claims that the court improperly denied the petition for termination of parental rights with respect to the father. Specifically, the petitioner claims that the court failed to properly analyze whether the father had abandoned Mariana pursuant to § 17a-112 (j) (3) (A). We are not persuaded.

We agree with the petitioner that whether the trial court applied the proper legal standard in assessing if the petitioner had presented clear and convincing evidence of abandonment is a question of law over which our review is plenary. If we determine that the court applied the proper statutory requirements, however, we do not engage in a reweighing of the evidence admitted to reach our own conclusion regarding abandonment. Rather, as previously indicated, we review the trial court's decision that the petitioner failed to meet her burden of proof for whether the trial court's conclusion is both legally and logically correct in light of the credited evidence.

"It is not lack of interest alone which is the criterion in determining abandonment. Abandonment under [§ 17a-112 (j) (3) (A)] requires failure to maintain interest, concern or responsibility as to the welfare of the child. Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . [If] a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment

has occurred. . . . General Statutes [§ 17a-112 (j) (3) (A)] does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 244, 251, 754 A.2d 169 (2000). In assessing as part of the adjudicatory phase whether the petitioner has proven the asserted ground for termination of parental rights, the trial court generally is confined to consider only evidence occurring prior to the adjudicatory date, i.e., the date the petition was filed or the date of the latest amendment to the petition. Practice Book § 35a-7.[10]

The court found that the father, who continues to reside in Puerto Rico, has never met Mariana in person, indicating that the mother left Puerto Rico when she was only two months pregnant with Mariana. According to the department social worker, the father acknowledged to the department that he was aware that the mother had given birth to his child in Connecticut but that he knew very little about her. It was only after the department contacted the father to inform him that Mariana was in the custody of the department that he took an interest in Mariana and began to communicate with her. It is not entirely clear from the record precisely when the father became aware that he was Mariana's biological father.

The father also did not appear in the underlying neglect proceedings. Although this reasonably could be construed as demonstrating a lack of interest in the legal proceedings and, thus, an implicit disinterest in remaining a parent to Mariana, that evidence would not have compelled the court to grant the petition and terminate the father's parental rights. Furthermore, this was not the only evidence that the court had to consider.

In support of its conclusion that the petitioner had failed to meet her burden of demonstrating abandonment by the father, the court made the following findings: "As of the adjudicatory date, [the father] demonstrated an interest in Mariana. Evidence was received that [the father] sent Mariana a picture of himself and called her by telephone at her foster home on a regular basis. With regard to financial support, [the mother] reported that she began receiving $210-$280 in monthly child support payments for Mariana from [the father] beginning sometime in late 2014 or early 2015, which support she continues to receive." (Internal quotation marks omitted.) As previously indicated, "[a]ttempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child." (Internal quotation marks omitted.) *In re Shane P.*, supra, 58 Conn. App. 251.

We recognize that reasonable jurists listening to the testimony and considering the evidence could disagree regarding whether the petitioner had established abandonment by clear and convincing evidence. We further recognize there is merit in the petitioner's assertion that for many years the father appears to have failed to take any action that would suggest an interest in Mariana or a concern for her welfare. Nevertheless, the evidence admitted and credited by the court shows that, after learning of Mariana's situation from the department, the father took some actions to establish a relationship with his daughter, including calling Mariana at her foster home on a regular basis, providing her with a photograph of himself, and providing financial support. Thus, over some period of time up to the relevant adjudicatory date,[11] there was evidence from which the court reasonably could have concluded that the father had made an effort to foster a relationship with Mariana, a relationship that her attorney indicated to the court she enjoys and wants to continue. We simply are not persuaded on this record that the court's decision to reject the petition on the ground of abandonment constitutes reversible error.

The judgment is affirmed.

In his opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** April 18, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court notes in its memorandum of decision that the Department of Children and Families' social study, which was admitted into evidence, indicates that "[Mariana's] father was married to mother's mother at the time of the affair."

[2] According to the social study admitted into evidence at the trial, the Department of Children and Families (department) received a referral through its Careline on the day that the mother gave birth to Alexis. Because of the department's removal of Mariana from the mother's care, the hospital staff wanted clearance from the department that the newborn infant could be released into the care of her parents. According to the social study, "[t]he Department conducted an assessment of family functioning and of the situation and allowed Alexis to be discharged from the hospital to [the mother]'s care. The Department enacted a Service Agreement/Safety Plan with the family to ensure Alexis' safety and well-being." Shortly thereafter, on December 10, 2015, the petitioner filed a petition alleging that Alexis had been neglected. The petitioner, however, withdrew the petition on May 27, 2016, without any adjudication of the merits or the rendering of any orders.

[3] Although the trial court found that, as of the adjudicatory date, the father continued to pay child support for Mariana, there was no definitive evidence presented at trial as to whether the father currently is employed.

[4] According to the petition, the police were dispatched to the mother's home on July 21, 2013, to respond to a domestic violence complaint involving the mother and Christian G. At that time, the mother indicated to the police that Christian G. had slapped her face during an argument, had a violent temper, and had pushed her in the past. The mother declined, however, to provide any written statement to the police and refused assistance to locate a safe shelter. A warrant was issued for Christian G., although he was not arrested until nearly one year later.

[5] The petitioner on appeal places great significance on the fact that the mother entered a nolo contendere plea during the neglect proceeding, seem-

ing to suggest that, by doing so, she forfeited her right to disagree with the facts alleged by the department, including that Christian G. was responsible for some or all of Mariana's injuries. Unquestionably, the mother's nolo contendere plea to the neglect allegations relieved the petitioner from having to prove at trial on the termination petition that Mariana previously had been neglected. The nolo plea, however, was not an admission of all factual allegations made by the department in its neglect petition, particularly those supporting the abuse allegations to which the plea did not apply. See *In re Elijah J.*, 141 Conn. App. 173, 199–201, 60 A.3d 1060, cert. denied, 308 Conn. 927, 64 A.3d 332 (2013). As we indicated in *In re Elijah J.*, there is a meaningful distinction between an express admission by a parent of the allegations of a petition and a plea of nolo contendere. "The consequences of an express admission are well understood to be that the parent admits the truth of the facts alleged in the petition for all purposes and agrees to the entry of judgment with respect to his or her child on the basis of those admitted facts. Such an admission can be used against the admitting parent in any future proceeding to which the admission is legally relevant. By contrast, the consequences of a plea of nolo contendere, which is not based upon an express admission of the allegations of the petition, is that those allegations are tacitly admitted for the purpose of the proceeding where the plea is entered, with the understanding that judgment may enter against the pleader with respect to his children on the basis of such allegations. Although a judgment entered against a party on the basis of a plea of nolo contendere can later be used as evidence against that party in any future proceeding to which the judgment is legally relevant, the plea itself is not admissible against him in any such later proceeding, either as an admission of the truth of the allegations underlying the claim or charge to which he pleaded or for any other purpose." (Emphasis omitted.) Id., 200–201. Here, the mother's nolo contendere plea does not constitute an admission that Christian G. abused Mariana.

[6] Shortly after the trial on the termination of parental rights petition, the great aunt indicated to the department that she no longer wanted to be considered as a placement option for Mariana and asked that Mariana be removed from her care. At the time of oral argument, however, Mariana remained with the great aunt.

[7] In particular, the court found that, in addition to providing case management services, the department had made numerous referrals on behalf of the mother for services intended to aid her in addressing the issues that led to her involvement with the department and to facilitate Mariana's return, including parenting education services and intimate partner violence services. With respect to the father, the court found that the department initially offered him an opportunity to be considered as a placement resource for Mariana and offered to pay for the father's plane fare from Puerto Rico and hotel expenses so he could meet Mariana and discuss placement and reunification with the department. Although he initially expressed an interest in being considered as a placement option for Mariana, the father claimed that he could not come to Connecticut. He provided conflicting reasons to the department, stating both that he was unemployed and that his employer would not approve the necessary time off.

[8] At trial, the attorney for the minor child took the position that the petition for termination of parental rights should be granted as to the mother and denied as to the father. The attorney for the minor child has changed that position on appeal as to the mother, however, largely because of the fact that Mariana no longer has the option of a stable and permanent placement with the great aunt, who has indicated to the department that she no longer wants to care for Mariana and that it should find a different placement for her. With respect to the father, the attorney for the minor child continues to advocate that his parental rights should not be terminated. In sum, the attorney for the minor child now advocates that we affirm the trial court's decision as to both parents, which will allow the department to explore all placement options, including the possibility of returning custody of Mariana to her mother or father. Resolution of this appeal does not require us to determine whether the father is a placement option in light of any factual question regarding whether his whereabouts are now unknown.

[9] To be clear, if a court's decision to deny a petition rested on clearly erroneous and material findings of fact, then the petitioner would be entitled to a new trial in which the evidence could be reconsidered in the absence of the erroneous finding.

It bears noting that in the petitioner's brief, she requests only that we reverse the trial court's decision because "it is legally and factually deficient."

She fails to indicate whether, if she were to prevail, we should order a new trial on the petition or direct the trial court to grant the petition and terminate the mother's parental rights.

[10] Practice Book § 35a-7 (a) provides: "In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights."

Accordingly, in those instances in which it may be necessary due to the adjudicatory ground asserted, the court may look to evidence arising subsequent to the adjudicatory date. For example, in assessing the ground of failure to rehabilitate, "the court *may* rely on events occurring after the [adjudicatory date] when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Emphasis in original; internal quotation marks omitted.) *In re Jennifer W.*, 75 Conn. App. 485, 495, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003).

[11] We note that the addendum to the social study dated March 6, 2017, which was admitted as exhibit E at trial, indicates that, as of the date of the addendum, the father had stopped communicating with the foster parent about Mariana's well-being, he no longer was in contact with Mariana, and the department was unaware of the father's whereabouts because he had not made himself available to the department. Because this information, however, postdates the filing of the petition to terminate on September 22, 2016, it properly was not considered by the trial court in evaluating whether the department had proven the asserted ground of abandonment by clear and convincing evidence. See Practice Book § 35a-7 (a).